Daniel A. Berman (State Bar No. 161696)
dberman@wshblaw.com
Tracy M. Lewis (State Bar No. 232985)
tlewis@wshblaw.com
Richard E. Zelonka (*Pro Hac Vice Forthcoming*)
rzelonka@wshblaw.com
**WOOD, SMITH, HENNING & BERMAN LLP**
6A Liberty Street, Suite 200
Aliso Viejo, California 92656
Phone: 949-757-4500 ♦ Fax: 949-757-4550

Attorneys for Plaintiff, LIBERTY MUTUAL INSURANCE EUROPE, LTD.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE EUROPE, LTD., <br><br> Plaintiff, <br><br> v. <br><br> RONALD NEWMAN, an individual; GREG NEWMAN, an individual; NEWPORT SHARKEEZ INC DBA BAJA SHARKEEZ-NEWPORT BEACH, a California corporation; GREG PAPPAS, an individual; CHRIS PAPPAS, an individual; MARK SERVENTI, an individual; RALPH NUDO, an individual and WOODY'S GROUP, INC., a California corporation. <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** <br><br> Trial Date:      None Set |

## COMPLAINT FOR DECLARATORY JUDGMENT

LIBERTY MUTUAL INSURANCE EUROPE, LTD ("Liberty") files this Complaint for Declaratory Judgment against RONALD NEWMAN, an individual; GREG NEWMAN, an individual; NEWPORT SHARKEEZ INC DBA BAJA SHARKEEZ-NEWPORT BEACH, a California corporation; GREG PAPPAS, an individual; CHRIS PAPPAS, an individual; MARK SERVENTI, an individual;

RALPH NUDO, an individual; and WOODY'S GROUP, INC., a California corporation,  seeking a determination regarding its rights and duties under Policy No. HP-0000014-0 (the "Policy"), stating as follows:

## NATURE OF THE ACTION

1.  This is a declaratory judgment action to determine Liberty's obligations under the Policy to defend and/or indemnify RONALD NEWMAN, GREG NEWMAN, and NEWPORT SHARKEEZ INC DBA BAJA SHARKEEZ-NEWPORT BEACH, in connection with litigation initiated in the Orange County Superior Court of California, Case No. 30-2018-01032672-CU-MC-CJC (" Underlying Lawsuit").  The Underlying Lawsuit stems from claims and cross-claims involving alleged breaches of contract, contractual interference and libel, in connection with the real property located at 2318 W. Newport Blvd., Newport Beach, California ("Subject Property").  A true and correct copy of the Policy to which Liberty subscribed for the period of January 29, 2015 to January 29, 2016  is attached as **Exhibit A** (the "Policy").  A true and correct copy of the Underlying Lawsuit's operative Second Amended Cross-Complaint filed by GREG PAPPAS, an individual; CHRIS PAPPAS, an individual; MARK SERVENTI, an individual; and RALPH NUDO, an individual (hereinafter collectively "Pappas Group"); against RONALD NEWMAN, GREG NEWMAN, and NEWPORT SHARKEEZ INC DBA BAJA SHARKEEZ-NEWPORT BEACH  is attached as **Exhibit B**.

2.  Liberty brings this insurance coverage action seeking a declaration under 28 U.S.C. § 2201 that it has no duty to defend or indemnify RONALD NEWMAN, GREG NEWMAN, and/or  NEWPORT SHARKEEZ INC DBA BAJA SHARKEEZ-NEWPORT BEACH  in the Underlying Lawsuit pursuant to multiple provisions of the Policy and well-established California law.

3.  Liberty has included the Pappas Group and WOODY'S GROUP, INC., a California corporation, as defendants to this action to ensure that all parties required to effectuate complete relief of the issues set forth herein are included.

# THE PARTIES, JURISDICTION, AND VENUE

4. Liberty is a private limited company organized and existing under the laws of England and Wales, with its principal place of business in the United Kingdom. Liberty is a citizen of the United Kingdom[1].

5. RONALD NEWMAN is an individual residing in Manhattan Beach, California. GREG NEWMAN is an individual residing in Hermosa Beach, California. RONALD and GREG NEWMAN ("Newmans") both serve as officers of NEWPORT SHARKEEZ INC DBA BAJA SHARKEEZ-NEWPORT BEACH ("Newport Sharkeez"). The street address for the principal executive office of Newport Sharkeez is 703 Pier Ave., Suite B-815, Hermosa Beach, California 90254. The street address for the principal business office in California is 114 McFadden, Newport Beach, California, 92663. Newport Sharkeez therefore also resides in California. Finally, Newport Sharkeez's registered agent, Lisa C Newman, may be served at 2150 Circle Drive, Hermosa Beach, California, 90254. Thus, for the purposes of diversity, the Newmans and Newport Sharkeez are citizens of California.

6. GREG PAPPAS is an adult individual residing in Orange County, California. CHRIS PAPPAS is an individual residing in Orange County, California. MARK SERVENTI is an adult individual residing in San Bernardino County, California. RALPH NUDO is an adult individual residing in San Bernardino County, California. For the purposes of diversity, Pappas, Serventi, and Nudo are

---

[1] For the Court's convenience, "private limited companies in the U[nited] K[ingdom] are treated as corporations for the purposes of diversity subject-matter jurisdiction." *SHLD, LLC v. Hall*, 15 CIV. 6225 LLS, 2015 WL 5772261, at *2 (S.D.N.Y. Sept. 29, 2015) (citation omitted); see *Simon Holdings PLC Group of Companies U.K. v. Klenz*, 878 F. Supp. 210, 211 (M.D. Fla. 1995) (treating a private limited company "incorporated under the laws of the United Kingdom" as a corporation for diversity and subject matter jurisdiction purposes pursuant to a determination of its citizenship under 28 U.S.C. § 1332); *Chok v. S & W Berisford, PLC*, 624 F.Supp. 440, 441 (S.D.N.Y.1985) (in which the court accepts the parties' agreement that a British private limited company "is a corporation formed under the laws of the United Kingdom," and therefore treats it as a corporation for purposes of diversity determination).

all citizens of California.

7. WOODY'S GROUP, INC., a California corporation with its principal executive office and principal place of business at the Subject Property in Newport Beach, California. Woody's Group, Inc. is a citizen of California.

8. Complete diversity of citizenship exists between Liberty, the Newmans, Newport Sharkeez, the Pappas Group and WOODY'S GROUP, INC., because Liberty is a citizen of the United Kingdom whereas the Newmans, Newport Sharkeez, Pappas Group and WOODY'S GROUP, INC., are California citizens. Further, the amount in controversy exceeds $75,000.

9. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over the Newmans, Newport Sharkeez, Pappas Group and WOODY'S GROUP, INC., because all of them reside in California. Further, the Policy was delivered to Newport Sharkeez in California with the understanding that its duties under the Policy would be performed in California. Newport Sharkeez lists a Newport Beach, California address on the Policy's Declaration Page. See **Ex. A** at p. 1.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of California, namely the Policy's delivery and the actual management and operation of Newport Sharkeez's business, as well as the fact the subject of the Underlying Lawsuit is real property located in Newport Beach, California.

12. This action is brought under 28 U.S.C. § 2201 and seeks a declaration regarding Liberty's obligations to defend and/or indemnify the Newmans and/or Newport Sharkeez under the Policy. An actual and justiciable dispute over those duties, rights, and obligations exists between the Parties.

## FACTS

13. In June 2005, the Pappas Group purchased a restaurant/bar known as Woody's Warf, located at 2318 W. Newport Blvd., Newport Beach, California ("Subject Property") from Ralph Furra ("Furra"). Liberty is informed and believes that Woody's Group, Inc., a California corporation, is the corporate entity that actually owns and operates Woody's Wharf. In June 2005, the Pappas Group (with no reference to Woody's Group Inc.) entered into a long-term Restaurant Lease Agreement for the Subject Property. The Pappas Group's lease commenced on 1 June 2005 and was set to expire on 31 May 2020. Article XX of the Pappas Group lease provides that the Pappas Group has a restricted right of first refusal for a lease extension. A true and correct copy of the Pappas Group's lease agreement is attached hereto as **Exhibit 1 to Exhibit B**.

14. Liberty is informed and believes that in the Fall of 2015, the Newmans expressed a desire to purchase Woody's Warf from the Pappas Group. Liberty is informed and believes that the Newmans completed their due diligence in investigating Woody's Warf's business and operations. During the course of the due diligence process, the Newmans allegedly came into knowledge of Woody's Warf's finances, lease terms and other private business information. Ultimately, the purchase/sales discussions failed.

15. On December 5, 2015, the Newmans, in their individual capacity, wrote to Furra regarding their interest in leasing the Subject Property. Via that email communication, the Newmans advised Furra of the failed purchase/sales discussions and made various statements about the Pappas Group, which are now alleged to constitute Libel and Trade Libel. That email communication makes no reference to Newport Sharkeez and does not indicate it was issued on behalf of Newport Sharkeez. A true and correct copy of that email communication is attached hereto as **Exhibit 5 to Exhibit B**.

/ / /

16.     On February 18, 2016, the Newmans, in their individual capacity, entered into a Restaurant Lease Agreement with Furra for the Subject Property. That Restaurant Lease Agreement is alleged to constitute Intentional Interference with Contractual Relations, Intentional Interference with Prospective Economic Advantage, Negligent Interference with Prospective Economic Advantage and Unfair Competition under Business and Professions Code §17200.  There is no reference to Newport Sharkeez in that Lease Agreement.  The lease was set to commence on June 1, 2020 and terminate on May 31, 2035.  As part of the arrangement, since February 2016 and until commencement of the lease, the Newmans had paid to Furra an additional $100,000.00 per year.  Liberty is informed and believes those monies were paid by the Newmans, in their individual capacity, to Furra with no reference to Newport Sharkeez on the subject checks.  A true and correct copy of the Newmans' Restaurant Lease Agreement with Furra is attached hereto as **Exhibit 4 to Exhibit B**.

17.     On November 5, 2018, the Pappas Group learned of the Newmans' Lease Agreement for the Subject Property. The Pappas Group asserted the Newmans' Lease Agreement was improper and in violation of the restricted first right of refusal provision set forth in their Restaurant Lease Agreement.

18.     On November 15 2018, Furra filed the Underlying Lawsuit against the Pappas Group asserting a cause of action for Declaratory Relief, seeking adjudication of the rights of Furra and the Pappas Group.

19.     On February 6, 2019, the Pappas Group filed their original Cross-Complaint against Furra alone.  Liberty is informed and believes that during the course of discovery, the Pappas Group obtained a copy of the December 5, 2015 email.

20.     On May 16, 2019, the Pappas Group filed a First Amended Cross-Complaint naming additional defendants, including the Newmans and Newport Sharkeez.  On August 14, 2019, the Pappas Group filed a Second Amended Cross-

Complaint, which asserts causes of action for Libel, Trade Libel, Intentional Interference with Contractual Relations, Intentional Interference with Prospective Economic Advantage, Negligent Interference with Prospective Economic Advantage and Unfair Competition against the Newmans and Newport Sharkeez. A true and correct copy of the operative Second Amended Cross-Complaint is attached hereto as **Exhibit B**.

21. On November 19, 2019 Liberty caused to be issued, correspondence advising that the Newmans and Newport Sharkeez would be provided with a defense subject to a Reservation of Rights, including the right to seek reimbursement of all costs, including defense fees pursuant to Buss v. Sup. Ct., (1997)16 Cal.4th 35. The subject Reservation of Rights letter expressly stated that the Newmans would not be considered insureds unless their actions at issue were related to their duties as officers of Newport Sharkeez . The subject Reservation of Rights letter also explained that the Policy set forth many exclusions that could bar or limit coverage. A true and correct copy of the subject Reservation of Rights letter is attached hereto as **Exhibit C**.

22. In February 2020, the Pappas Group issued a settlement demand of $1,000,000.00. In response, Liberty via its counsel repeatedly requested copies of any evidence, documents or information linking the Newmans' conduct at issue in the Underlying Lawsuit to Newport Sharkeez. No such evidence, documents or information were provided.

23. On or about February 20, 2020 Furra advised the Newmans that he was rescinding his Lease Agreement with them, provided a copy of the new lease with the Pappas Group which runs from June 1, 2020 – May 31, 2035, returned all of the monies the Newmans had provided in accordance with the terms of their 2016 Lease Agreement and dismissed his Complaint. That correspondence was directed to the Newmans in their individual capacity and made no reference to Newport Sharkeez. A true and correct copy of that correspondence is attached hereto as

**Exhibit D**.

24. On March 2, 2020, the Newmans, in their individual capacity, with no reference to Newport Sharkeez, filed a Complaint against Furra for Breach of Contract and Specific Performance. That Complaint also asserted claims for economic interference against the Pappas Group. A true and correct copy of that lawsuit is attached hereto as **Exhibit E**.

25. On April 7, 2020 the Pappas Group, as Cross-Defendants, issued a California Statutory Offer to Compromise in the amount of $1,000,000.00. In response, Liberty via its counsel again requested copies of any evidence, documents or information linking the Newmans' conduct at issue in the Underlying Lawsuit to Newport Sharkeez, so that the demand could be evaluated. No such evidence, documents or information have been provided to Liberty to date. Liberty's deadline to respond to the California Statutory Offer to Compromise in the Underlying Lawsuit was June 8, 2020.

26. Liberty now seeks a declaration concerning its obligations to defend and indemnify the Newmans and Newport Sharkeez in the Underlying Lawsuit.

## THE POLICY

27. The Policy includes numerous terms and conditions that are implicated in this coverage dispute.

28. The Policy provides coverage for officers of the Named Insured, Newport Sharkeez, but only with respect to their duties as an officer of Newport Sharkeez. The Policy provides:

> **SECTION II – WHO IS AN INSURED**
>
> **1.** If you are designated in the Declarations as:
>
> ***
>
> **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your

"executive officers" and directors are insureds, but only
with respect to their duties as your officers or directors…"
(CG 00 01 04 13, Section II (1)(d))

29. Coverage A of the Policy only provides coverage for "bodily injury" and/or "property damage" caused by an "occurrence" during the policy period or "personal advertising injury". The Policy provides:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking        damages for "bodily injury" or "property damage" to which this insurance does not apply…

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period…

30. The Policy defines the terms "bodily injury" and "property damage" as follows:

**3.** "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of

these at any time.

\*\*\*

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of   the "occurrence" that caused it.

(CG 00 01 04 13, pgs. 13 and 15 of 16)

31. Coverage B of the Policy provides coverage for Personal and Advertising Injury but sets forth several exclusions. The Policy provides:

**SECTION I - COVERAGES**

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

\*\*\*

**2. Exclusions**

This insurance does not apply to

    a. **Knowing Violation Of Rights Of Another**

    "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal advertising injury".

    b. **Material Published With Knowledge Of Falsity**

    "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by

or at the direction of the insured with knowledge of its falsity.

(CG 00 01 04 13, Coverage B, Paragraph 2(a) and (b), pg. 6 of 16).

32. The Policy also contains an endorsement that excludes coverage for claims arising out of or premised upon disclosure of confidential or personal information. The Policy provides:

**EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY-WITH LIMITED BODILY INJURY EXCEPTION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

\*\*\*

B. The following is added to Paragraph **2. Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, health information or any other type of nonpublic information."

(CG 21 06 05 14)

33. The Policy also contains an endorsement that excludes coverage for punitive damages. The Policy provides:

/ / /

**PUNITIVE DAMAGES EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to **Section I – COVERAGES, 2. Exclusions:**

**Punitive Damages**

Fines, penalties, punitive, exemplary, vindictive or other non-compensatory damages imposed upon the insured, or any multiplied portion of compensatory damages.

(HP GL 18 10 14)

## COUNT I

### (<u>THE NEWMANS ARE NOT CONSIDERED INSUREDS UNDER THE POLICY WITH RESPECT TO THE UNDERLYING LAWSUIT</u>)

34. Liberty incorporates the allegations in paragraphs 1-30 as if fully stated herein.

35. As set forth above, Liberty is currently providing a defense to the Newmans and Newport Sharkeez in the Underlying Lawsuit under a full Reservation of Rights.

36. The Second Amended Cross-Complaint in the Underlying Lawsuit, for which Liberty has been providing the Newmans and Newport Sharkeez with a defense, arises in part out of the Newmans' December 5, 2015 email. That email was sent by the Newmans, in their individual capacity, makes no reference to Newport Sharkeez and does not indicate it was issued on behalf of Newport Sharkeez. A true and correct copy of that email communication is attached hereto as **Exhibit 5 to Exhibit B.**

37. The Second Amended Cross-Complaint in the Underlying Lawsuit, for which Liberty has been providing the Newmans and Newport Sharkeez with a defense, arises in part out of the Newmans' February 18, 2016 Restaurant Lease

1 Agreement with Furra for the Subject Property. There is no reference to Newport
2 Sharkeez in that Lease Agreement. Further, the lease was set to commence on June
3 1, 2020 and terminate on May 31, 2035. As part of the arrangement, since February
4 2016 and until commencement of the lease, the Newmans had paid to Furra an
5 additional $100,000.00 per year. A true and correct copy of the Newmans'
6 Restaurant Lease Agreement with Furra is attached hereto as **Exhibit 4 to Exhibit**
7 **B**. Liberty is informed and believes those monies were paid by the Newmans, in
8 their individual capacity, to Furra with no reference to Newport Sharkeez on the
9 subject checks.

10     38. The Policy extends coverage to the executive officers and directors of
11 Newport Sharkeez, but only with respect to their duties as officers or directors of
12 Newport Sharkeez.

13     39. Despite repeated requests by Liberty, the Newmans have failed to
14 provide any evidence or information even suggesting that their actions, which serve
15 as the basis for the Second Amended Cross-Complaint in the Underlying Lawsuit,
16 were undertaken as part of their duties as officers of Newport Sharkeez.

17     40. Because the Newmans' conduct, which gives rise to the Second
18 Amended Cross-Complaint in the Underlying Lawsuit, was not undertaken as part
19 of their duties as officers of Newport Sharkeez, they are not considered insureds
20 under the Policy.

21     41. Liberty therefore respectfully requests that the Court declare that
22 Liberty has no duty or obligation to defend and/or indemnity the Newmans and/or
23 Newport Sharkeez in the Underlying Lawsuit.

## COUNT II
### (<u>COVERAGE A IS NOT TRIGGERED UNDER THE POLICY</u>)

26     42. Liberty incorporates the allegations in paragraphs 1-38 as if fully stated
27 herein.
28 ///

43. Under Coverage A of the Policy, Liberty has the duty to defend and indemnify the insured against any suit seeking damages because of bodily injury or property damage to which the Policy applies.

44. The Second Amended Cross-Complaint within the Underlying Litigation does not assert any claim for bodily injury or property damage as defined by the Policy. A true and correct copy of the operative Second Amended Cross-Complaint is attached hereto as **Exhibit B**.

45. Liberty therefore respectfully requests that the Court declare that Liberty has no duty or obligation to defend and/or indemnity the Newmans and/or Newport Sharkeez in the Underlying Lawsuit pursuant to Coverage A.

## COUNT III
## (<u>ACTS UNDERTAKEN WITH KNOWLEDGE THEY WOULD CAUSE PERSONAL ADVERTISING INJURY ARE EXCLUDED UNDER COVERAGE B</u>)

46. Liberty incorporates the allegations in paragraphs 1-42 as if fully stated herein.

47. As set forth above, Liberty is currently providing a defense to the Newmans and Newport Sharkeez in the Underlying Lawsuit under a full Reservation of Rights.

48. The Second Amended Cross-Complaint in the Underlying Lawsuit, for which Liberty has been providing the Newmans and Newport Sharkeez with a defense, arises in part out of the Newmans' December 5, 2015 email to Furra. Via that email communication, the Newmans advised Furra of the failed purchase/sales discussions and made various statements about the Pappas Group, which are now alleged to constitute Libel and Trade Libel. A true and correct copy of that email communication is attached hereto as **Exhibit 5 to Exhibit B.**

49. The Second Amended Cross-Complaint in the Underlying Lawsuit, for which Liberty has been providing the Newmans and Newport Sharkeez with a

defense, arises in part out of the February 18, 2016, Restaurant Lease Agreement that the Newmans, entered into with Furra for the Subject Property.  That Restaurant Lease Agreement is alleged to constitute Intentional Interference with Contractual Relations, Intentional Interference with Prospective Economic Advantage, Negligent Interference with Prospective Economic Advantage and Unfair Competition under Business and Professions Code §17200.  A true and correct copy of the Newmans' Restaurant Lease Agreement with Furra is attached hereto as **Exhibit 4 to Exhibit B**.

50.     Under Coverage B of the Policy, coverage is expressly excluded for personal advertising injury caused by the insured with knowledge that the acts would violate the rights of another and would inflict such injury.  The Second Amended Complaint in the Underlying Lawsuit asserts that the Newmans knew the statements made in the December 5, 2015 email were false at the time made and knew the statements would violate the rights of the Pappas Group.  It is also alleged that the Newmans knew their Restaurant Lease Agreement with Furra, for the Subject Property, interfered with the Pappas Group's contractual rights and future earnings, and such violated their rights.

51.     Because coverage is excluded with respect to acts undertaken with knowledge that they would violate the rights of another and would inflict personal advertising injury, Liberty has no duty or obligation to defend and/or indemnity the Newmans and/or Newport Sharkeez in the Underlying Lawsuit pursuant to Coverage B.

52.     Liberty therefore respectfully requests that the Court declare that Liberty has no duty or obligation to defend and/or indemnify the Newmans and/or Newport Sharkeez in the Underlying Lawsuit pursuant to Coverage B.

/ / /

/ / /

/ / /

# COUNT IV

## (MATERIAL PUBLISHED WITH KNOWLEDGE OF FALSITY IS EXCLUDED UNDER COVERAGE B)

53. Liberty incorporates the allegations in paragraphs 1-49 as if fully stated herein.

54. As set forth above, Liberty is currently providing a defense to the Newmans and Newport Sharkeez in the Underlying Lawsuit under a full Reservation of Rights.

55. The Second Amended Cross-Complaint in the Underlying Lawsuit, for which Liberty has been providing the Newmans and Newport Sharkeez with a defense, arises in part out of the Newmans' December 5, 2015 email to Furra. Via that email communication, the Newmans advised Furra of the failed purchase/sales discussions and made various statements about the Pappas Group, which are now alleged to constitute Libel and Trade Libel. A true and correct copy of that email communication is attached hereto as **Exhibit 5 to Exhibit B**.

56. The Second Amended Cross-Complaint in the Underlying Lawsuit, for which Liberty has been providing the Newmans and Newport Sharkeez with a defense, arises in part out of the February 18, 2016, Restaurant Lease Agreement that the Newmans, entered into with Furra for the Subject Property. That Restaurant Lease Agreement is alleged to constitute Intentional Interference with Contractual Relations, Intentional Interference with Prospective Economic Advantage, Negligent Interference with Prospective Economic Advantage and Unfair Competition under Business and Professions Code §17200. A true and correct copy of the Newmans' Restaurant Lease Agreement with Furra is attached hereto as **Exhibit 4 to Exhibit B**.

57. Under Coverage B of the Policy, coverage is expressly excluded for personal advertising injury caused by the publication of statements known to be false. The Second Amended Complaint in the Underlying Lawsuit asserts that the

Newmans knew the statements made in the December 5, 2015 email were false at the time made.  It is also alleged that those false statements helped the Newmans secure their Restaurant Lease Agreement with Furra, for the Subject Property, which interfered with the Pappas Group's contractual rights and future earnings.

58. Because coverage is excluded with respect to statements published with knowledge that they were false, Liberty has no duty or obligation to defend and/or indemnify the Newmans and/or Newport Sharkeez in the Underlying Lawsuit pursuant to Coverage B.

59. Liberty therefore respectfully requests that the Court declare that Liberty has no duty or obligation to defend and/or indemnify the Newmans and/or Newport Sharkeez in the Underlying Lawsuit pursuant to Coverage B.

## COUNT V
### (DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION IS EXCLUDED FROM COVERAGE B)

60. Liberty incorporates the allegations in paragraphs 1-56 as if fully stated herein.

61. As set forth above, Liberty is currently providing a defense to the Newmans and Newport Sharkeez in the Underlying Lawsuit under a full Reservation of Rights.

62. The Second Amended Cross-Complaint in the Underlying Lawsuit, for which Liberty has been providing the Newmans and Newport Sharkeez with a defense, arises in part out of the Newmans' December 5, 2015 email to Furra.  Via that email communication, the Newmans advised Furra of the failed purchase/sales discussions and made various statements about the Pappas Group's financial condition, which are now alleged to constitute Libel and Trade Libel. Those statements are alleged to include information about or based upon the Pappas Group's finances which were confidential and/or private, and only known to the Newmans because of the failed purchase/sales discussions.  A true and correct copy

of that email communication is attached hereto as **Exhibit 5 to Exhibit B**.

63. The Second Amended Cross-Complaint in the Underlying Lawsuit, for which Liberty has been providing the Newmans and Newport Sharkeez with a defense, arises in part out of the February 18, 2016, Restaurant Lease Agreement that the Newmans, entered into with Furra for the Subject Property. It is alleged that the Newmans were able to secure the Restaurant Lease Agreement for the Subject Property by making statements regarding confidential and/or private financial information about the Pappas Group, which the Newmans allegedly obtained because of the failed purchase/sales discussions. The Restaurant Lease Agreement is alleged to constitute Intentional Interference with Contractual Relations, Intentional Interference with Prospective Economic Advantage, Negligent Interference with Prospective Economic Advantage and Unfair Competition under Business and Professions Code §17200. A true and correct copy of the Newmans' Restaurant Lease Agreement with Furra is attached hereto as **Exhibit 4 to Exhibit B**.

64. Under Coverage B of the Policy, coverage is expressly excluded for personal advertising injury arising out of any access to or disclosure of any person's or organization's confidential or personal information, including financial information or any other type of nonpublic information. The Second Amended Complaint in the Underlying Lawsuit asserts that the Newmans used confidential and/or private financial information about the Pappas Group, which the Newmans allegedly obtained because of the failed purchase/sales discussions, in a manner that constituted libel and trade libel in order to secure their Restaurant Lease Agreement for the Subject Property, which interfered with the Pappas Group's contractual right and future earnings.

65. Because coverage is excluded with respect to personal advertising injury arising out of any access to or disclosure of any person's or organization's confidential or personal information, including financial information, Liberty has no

1 duty or obligation to defend and/or indemnify the Newmans and/or Newport

2 Sharkeez in the Underlying Lawsuit pursuant to Coverage B.

3     66.     Liberty therefore respectfully requests that the Court declare that

4 Liberty has no duty or obligation to defend and/or indemnify the Newmans and/or

5 Newport Sharkeez in the Underlying Lawsuit pursuant to Coverage B.

## COUNT VI

## (<u>PUNITIVE DAMAGES ARE EXCLUDED</u>)

8     67.     Liberty incorporates the allegations in paragraphs 1-63 as if fully stated

9 herein.

10     68.     The Second Amended Cross-Complaint in the Underlying Lawsuit, for

11 which Liberty has been providing the Newmans and Newport Sharkeez with a

12 defense, seeks punitive damages.

13     69.     Punitive damages are expressly excluded from coverage under the

14 Policy.

15     70.     For this reason, coverage is not available to the Newmans and/or

16 Newport Sharkeez for any punitive damages awarded.

17     71.     Liberty therefore respectfully requests that the Court declare that

18 coverage is unavailable to the Newmans and/or Newport Sharkeez for any punitive

19 damages that are awarded.

## PRAYER FOR RELIEF

21 Wherefore, Liberty respectfully requests this Court enter a judgment in its

22 favor and against the Newmans and Newport Sharkeez:

23     a.     Declaring Liberty has no obligation to defend or indemnify the Newmans because they are not insureds under the Policy with respect to the Underlying Lawsuit;

25     b.     Declaring that Liberty has no obligation to defend and/or indemnify the Newmans and/or Newport Sharkeez because there are no claims for bodily injury or property damage at issue in the Underlying Lawsuit;

27     c.     Declaring that Liberty has no obligation to defend and/or indemnify the Newmans and/or Newport Sharkeez because the

exclusion for acts undertaken with knowledge they would cause personal advertising injury bars coverage;

    d.    Declaring that Liberty has no obligation to defend and/or indemnify the Newmans and/or Newport Sharkeez because the exclusion for material published with knowledge of falsity bars coverage;

    e.    Declaring that Liberty has no obligation to defend and/or indemnify the Newmans and/or Newport Sharkeez because the exclusion for the disclosure of confidential or personal information bars coverage;

    f.    Declaring that Liberty has may withdraw its defense of the Newmans and/or Newport Sharkeez in the Underlying Lawsuit;

    g.    Awarding Liberty the costs and attorneys' fees it has incurred to defend the Newmans and/or Newport Sharkeez in the Underlying Lawsuit for which it owed no duty to defend;

    h.    Awarding Liberty the costs incurred in bringing this declaratory judgment action; and

    i.    Further relief as this Court may deem appropriate.

DATED:  July 15, 2020    WOOD, SMITH, HENNING & BERMAN LLP

By: _____
    DANIEL A. BERMAN
    TRACY M. LEWIS
Attorneys for Plaintiff, LIBERTY MUTUAL INSURANCE EUROPE, LTD.